**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| EARL JAMES, | : | Civil No. 07-3609 (KSH) |
|  | : | Civil No. 07-4683 (KSH) |
| Plaintiffs, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| SUPERIOR COURT OF NEW JERSEY, | : |  |
| et al., | : |  |
|  | : |  |
| Defendants. | : |  |

**APPEARANCES**:

      EARL JAMES, #44524-054, Pro Se
      FCI Allenwood Low
      P.O. Box 1000
      White Deer, Pennsylvania 17887-1000

**HAYDEN**, District Judge

      This matter comes before the Court upon the circuit court's order remanding the plaintiff's case to this Court.   See Civil No. 07-4683, Docket No. 17.    For the reasons stated below, this Court will: (1) dismiss the allegations stated in plaintiff's pleadings that were addressed in this Court's opinion and order docketed as Docket Nos. 2 and 3 in Civil No. 07-3609; (2) direct the Clerk to docket those opinion and order, as well as plaintiff's pleadings docketed in Civil No. 07-3609, in Civil No. 07-4683; (3) dismiss the plaintiff's allegations that the Port Authority of New York and New Jersey and its unnamed agents violated his constitutional rights by not informing him during his appearance at the Bergen County Courthouse on May 23, 2005, that his vehicle could

be impounded; (3) deny the plaintiff's motion to amend his pleadings in the fashion described in Civil No. 07-4683, Docket No. 6; and (4) grant the plaintiff leave to amend his pleadings, pursuant to the circuit court's order, Civil No. 07-4683, Docket No. 17, provided that such amendment is executed in accordance with requirements of Rules 18 and 20.

## I. BACKGROUND

On August 2, 2007 while incarcerated at the Federal Correctional Institution at Allenwood, the plaintiff filed a complaint docketed in Civil No. 07-3609.    The complaint named, as defendants in Civil No. 07-3609, the Superior Court of New Jersey, Assistant Prosecutor Ostini, Hackensack Police Department, police chief Zisa, police officers Carroll, Finley and Aletta, the United States Postal Inspection Service and Inspector Coppola, Assistant United States Attorney Massey, and Port Authority of New York and New Jersey and its unknown agents.   On October 1, 2007, the plaintiff, while still being incarcerated at the Federal Correctional Institution at Allenwood, filed substantively identical pleadings docketed in Civil No. 07-4683; the pleadings named the same defendants.   On October 19, 2007 this Court issued an order and accompanying opinion granting the plaintiff's motion to proceed in forma pauperis, directing the Clerk to assess the filing fee in connection with Civil No. 07-4683, and dismissing the complaint in that action.   Specifically, the Court dismissed the plaintiff's claims against the Hackensack police department and the United States Postal Inspection Service since these entities were not "persons" subject to suit under 42 U.S.C. § 1983, and its federal counterpart, an action brought pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).   The Court also dismissed the plaintiff's

2

allegations against the Superior Court of New Jersey on the same grounds or, alternatively construing the plaintiff's allegations as those made against the Superior Court judge, on the grounds of absolute immunity conferred by the Eleventh Amendment upon the judges acting within their judicial capacity.   In addition, the Court dismissed allegations against the prosecutor and the Assistant United States Attorney on the grounds of their absolute immunity from suit under 42 U.S.C. § 1983, and under its federal counterpart, a Bivens action.   The Court also dismissed the allegations against the Assistant United States Attorney and police chief Zisa, since the plaintiff's allegations against these defendants were based solely on the fact that they were supervising other defendants named by the plaintiff.   Furthermore, the Court dismissed the malicious prosecution claim (construed as addressing plaintiff's federal charges) as premature, pursuant to the holding of Heck v. Humphrey, 512 U.S. 477 (1994), and also dismissed the plaintiff's wrongful arrest claim as time barred, pursuant to the holding of Wallace v. Kato, 127 S. Ct. 1091 (2007).   Finally, the Court dismissed the plaintiff's allegations subject to the Federal Tort Claims Act for lack of jurisdiction in light of plaintiff's failure to exhaust his administrative remedies.

On February 7, 2008 this Court screened the plaintiff's pleading docketed in Civil No. 07-3609, and determined that, while the complaint in that matter was substantively identical to that docketed in Civil No. 07-4683, certain language in the complaint docketed in Civil No. 07-3609 allowed for alternative construction of the allegations made on both plaintiff's pleadings.   Therefore, the Court directed the Clerk to docket the complaint filed in Civil No. 07-3609 as a supplemental complaint in Civil No. 07-4683, without assessing the filing fee, and re-screened both complaints jointly.   The

3

Court detected and dismissed four additional claims and one alternative claim. Specifically, the Court dismissed, for failure to state a claim upon which relief may be granted, the plaintiff's allegations that: (1) his vehicle was impounded without a proper warrant; (2) Inspector Coppola and other defendants falsely testified during the plaintiff's indictment proceedings; and (3) the police officers of the Hackensack police department conducted a negligent investigation of the insurance fraud charges associated with the plaintiff's vehicle.   The Court also dismissed the plaintiff's allegations based on federal statutes for failure to state a claim, since the statutes invoked by the plaintiff were inapplicable to the case at bar and, in addition, did not provide right of private action.   Finally, the Court dismissed plaintiff's alternative malicious prosecution claim (construed as addressing his state charges) on the grounds relied upon by the Court in its dismissal of the malicious prosecution claim based on the plaintiff's federal charges, i.e., as premature.   Issuing its February 7, 2008 order and opinion, the Court directed the Clerk to: (1) administratively terminate Civil No. 07-3609; and (2) docket February 7, 2008 order and opinion in both Civil No. 07-3609 and Civil No. 07-4683.   The Clerk docketed the February 7, 2008 order and opinion in Civil No. 07-3609, but the Clerk failed to docket the February 7, 2008 order and opinion in Civil No. 07-4683.

Prior to the Court's issuance of its February 7, 2008 order and opinion, the plaintiff filed, with respect to the Court's October 19, 2007 order entered in Civil No. 07-4683,   a document captioned   "Notice of Appeal and Motion to Amend Original Complaint."   See Civil No. 07-4683, Docket No. 6.   This was docketed as a "Notice of Appeal." The motion-to-amend portion requested permission to assert that the plaintiff

4

was suing police officers Carroll, Finley and Aletta, police chief Zisa, Assistant United States Attorney Massey, Inspector Coppola and unknown agents of the Port Authority of New York and New Jersey "jointly and severally in their private and public capacit[ies]." Id. at 2.

On July 18, 2008, the circuit court granted the plaintiff's appellate application stating the circuit court's view that the plaintiff's allegations were more accurately construed in the Court's February 7, 2008 opinion entered upon the Court's re-screening of both complaints jointly. See James v. Superior Ct., C.A. No. 07-4332, at 4. The circuit court's decision, however, noted that the scope of appellate review was limited solely to this Court's October 19, 2007 order entered in Civil No. 07-4683, since the Court's February 7, 2008 opinion and order were not docketed in Civil No. 07-4683. See id., at 3-4 and n. 1 ("We have appellate jurisdiction under 28 U.S.C. § 1291 to the extent that [the plaintiff] is appealing the order issued in [Civil] No. 07-4683. [The February 7, 2008 opinion and] order has not been entered in the docket in [Civil] No. 07-4683").[1] The circuit court's decision remanded the matter to this Court with instructions to allow the plaintiff an opportunity to amend his complaint. In a footnote,

_____

[1] In addition, the circuit court pointed out that "a district court is generally not permitted to take action in a case after the filing of a timely notice of appeal." James v. Superior Ct., C.A. No. 07-4332, at 3-4, n.1 (citing Venen v. Sweet, 758 F.2d 117, 120-21 (3d Cir. 1985); but see United States v. Banks, 2008 U.S. App. LEXIS 5639, at *3 (3d Cir. Mar. 14, 2008) ("As the [c]ourt explained in Venen [v. Sweet, 758 F.2d at 121], this rule "has the salutary purpose of preventing the confusion and inefficiency which would of necessity result were two courts to be considering the same issue or issues simultaneously. The [Venen] court added that '[t]he rule is a judge-made, rather than a statutory, creation . . . [and thus, as] a prudential doctrine, the rule should not be applied when to do so would defeat its purpose of achieving judicial economy'").

the decision noted that, "[i]n addition to the claims discussed in [this Court's previous rulings, the plaintiff] has alleged that the Port Authority of New York and New Jersey and its unnamed agents violated his constitutional rights by not informing him during his appearance at the Bergen County Courthouse on May 23, 2005, that the vehicle he had driven to the [C]ourthouse [would be] impounded and . . . held at a Port Authority facility."   James v. Superior Ct., C.A. No. 07-4332, at 5, n.2.

## II. STANDARD FOR SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity.   See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.   The PLRA requires the court to sua sponte dismiss any claim if the court determines that it is frivolous, malicious, fails to state a claim on

6

which relief may be granted, or seeks monetary relief from a defendant who is immune from such

relief.   Id.

"A document filed pro se is to be liberally construed, and a pro se complaint, however

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

lawyers."   Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations and internal

quotation marks omitted); see also Haines v. Kerner, 404 U.S. 519, 520 (1972). "Federal Rule

of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that

the pleader is entitled to relief.' Specific facts are not necessary; the statement need only give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson,

127 S. Ct. at 2200 (citations and internal quotation marks omitted).

The circuit court recently provided detailed and highly instructive guidance as to what type of allegations qualify as sufficient to puss muster under the Rule 8 pleading standard.   See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). The circuit court explained, in relevant part:

> [T]he pleading standard can be summed up thus: stating ... a claim
>
> requires a complaint with enough factual matter (taken as true) to suggest

7

the required element.   This does not impose a probability requirement at

the pleading stage[,] but . . . calls for enough facts to raise a reasonable

expectation that discovery will reveal evidence of the necessary element.

Id., at 234 (internal quotation marks and citations omitted).

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations

describe "fantastic or delusional scenarios."   Neitzke v. Williams, 490 U.S. 319, 328 (1989); see

also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).   "Given the Federal Rules' simplified

standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be

granted under any set of facts that could be proved consistent with the allegations."

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding,

467 U.S. 69, 73 (1984)); see also Thomas v. Independence Tp., 463 F.3d 285, 296-97 (3d Cir.

2006); Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004).

However, the court should not dismiss a complaint with prejudice for failure to

state a claim without providing leave to amend, unless it finds bad faith, undue delay,

prejudice or futility.   See Grayson v. Mayview State Hosp., 293 F. 3d 103, 110-111 (3d

Cir. 2002); Shane v. Fauver, 213 F. 3d 113, 117 (3d Cir. 2000).

### III. DISCUSSION

Federal courts are courts of limited jurisdiction.   See Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U.S. 379, 383 (1884).   "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."   Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986).   A district court may exercise original jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority."   U.S. Const. art. III., § 2; see also 28 U.S.C. § 1331.

Section 1983 of Title 42 of the United States Code authorizes a person such as the plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law.   Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

9

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v.Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

This Court, therefore, will now screen the plaintiff's pleadings with respect to his allegations that the Port Authority of New York and New Jersey and its unnamed agents violated his constitutional rights by not informing him during his appearance at the Bergen County Courthouse on May 23, 2005, that his vehicle, if located, would be impounded.   The Court will also examine the motion-to-amend part of the plaintiff's "Notice of Appeal and Motion to Amend Original Complaint" docketed in Civil No. 07-4683 as Docket No. 6.

A. Failure to Inform

The pertinent facts were discussed by this Court in great detail in its February 7, 2008 opinion.   Specifically, this Court observed that,

> [o]n May 18, 2005, a federal grand jury siting in the Southern District of New York returned a two-count indictment charging the plaintiff with conspiracy to use stolen credit cards . . . .   See United States v. James, Crim. No. 05-0540 (CM) (S.D.N.Y. filed May 18, 2005).   The indictment arose after Bergen County police arrested the plaintiff on April 10, 2001, and searched the Lincoln Navigator vehicle he and another person occupied as they attempted to obtain a package from an overnight delivery courier.   See In re Application for Search Warrant, Crim. No. 05-mj-6061 (RJH) (D.N.J. filed June 13, 2005).   Inside the car, police officers found a laptop computer, an external data storage device, and several cellular telephones containing the names and identifying information of the victims of the scheme to defraud credit card holders by purchasing merchandise with a stolen   credit card and requesting the merchandise to be delivered to the legitimate cardholder by overnight courier.   Id.   . . .   Pursuant to the indictment, an arrest warrant issued,

and on May 23, 2005, the plaintiff was arrested by federal authorities. See United States v. James, Crim. No. 05-0540 . . . .

The plaintiff asserts that, on May 23, 2005, he appeared in the Superior Court of New Jersey in Hackensack, New Jersey, on New Jersey criminal charges . . . brought as a result of the April 10, 2001, arrest by local police. [The plaintiff asserts that he had driven to the Superior Court Courthouse in his car, which he had parked at an unspecified location.] According to this transcript, defendant Ostuni appeared for the state [in these Superior Court proceedings.   T]hese New Jersey charges were dismissed at the request of Ostuni on the ground that a federal indictment had issued on the matter and the plaintiff was to appear that afternoon in the United States District Court for the Southern District of New York on the new federal charges. [Consequently,] the Postal Inspection Service and the Port Authority arrested him . . . and transported him to the United States District Court for the Southern District of New York, [where]   he appeared . . . that afternoon [and] was released later that day on bond. Id.

The plaintiff asserts that, unbeknownst to the plaintiff, [in the afternoon hours of] May 23, 2005, [Inspector Coppola found the plaintiff's car and unnamed agents of] the Port Authority impounded the plaintiff's vehicle. According to the affidavit of [Inspector] Coppola, [the plaintiff's] car, a Chrysler Pacifica, was impounded because it was parked at an expired meter and, in plain view inside the vehicle, a law enforcement official saw an external data storage device, an electrical power converter for a laptop computer, and a cell telephone, all consistent with the instrumentalities of fraud recovered from the Navigator on April 10, 2001.   Id.   According to Coppola, on June 13, 2005, the United States Attorney's Office in the

11

District of New Jersey filed an application to obtain a warrant to search the Pacifica, which was [still] parked in a Port Authority lot in Fort Lee, and to seize property constituting evidence, fruits and instrumentalities of a federal crime.  Id.  The docket reflects that [the warrant] was returned executed on July 25, 2005. . . . .

The plaintiff asserts that, although defendants Coppola and Massey were in court on May 23, 2005, no one told him that [the Pacifica, if found, would be] impounded.   He asserts that upon his release on bond [by United States District Court for the Southern District of New York,] he went to Hackensack to retrieve [the Pacifica], and discovered that it was not where he had parked it.   He states that he telephoned the Hackensack police, and an officer informed him that a computer search revealed that the vehicle had not been impounded, and that he should report the car stolen . . . . [T]wo days later, he reported the car as stolen to the Hackensack police and Allstate Insurance Company. . . . .

Several documents are attached to the complaint. . . .   Exhibit B is a . . . report dated June 16, 2005, by [officer] Finley . . . concerning a complaint for theft by deception she brought against the plaintiff.   The report states that, on June 15, 2005, police received a teletype from [Inspector] Coppola stating that the vehicle which the plaintiff reported stolen . . . , had been impounded by the Postal Service . . . on May 23, 2005.   Finley further reported that, according to Coppola, the plaintiff had been advised on May 23, 2005, while he was in the Superior Court, that the [Pacifica] was going to be impounded, but [the plaintiff] refused to give federal officials the location of the vehicle [causing them to start a search for the Pacifica.   The report of officer]   Finley . . . further states that she contacted Ostuni, who told her that the plaintiff had been advised in court that the vehicle was going to be impounded and that the plaintiff denied owning the vehicle.   Finley conclude[d her report by stating] that, based on her investigation, she signed criminal complaints against the plaintiff for attempted theft by deception and false reporting, and obtained a warrant for his arrest.

James v. Superior Court, Civil No. 07-3609, 2008 U.S. Dist. LEXIS 9012 at *5-11.

The circuit court noted that this Court did not address the plaintiff's allegations that the Port Authority of New York and New Jersey and its unnamed agents violated the plaintiff's constitutional rights by not informing him during his appearance at the Bergen County Courthouse on May 23, 2005 that the Pacifica, if found, would be impounded.[2]   Specifically, the plaintiff asserts that, had he been informed, during the plaintiff's May 23, 2005 morning appearance at the Bergen County Courthouse, of the agents' plans (i.e., of the facts that the agents were planning to find the Pacifica and, if they found the vehicle, they were planning to impound the Pacifica later on that day at one of the Port Authority's yards), the plaintiff would not have reported the Pacifica stolen two days later, which, in turn, would have prevented officer Finley from obtaining a warrant for the plaintiff's arrest on the charges of attempted theft by deception and false reporting, which, in turn, would have ensured the plaintiff against the danger of being eventually prosecuted and sentenced to a prison term on the basis of these charges.   See Civil No. 08-4683, Docket No. 1-1, at 2-3.

_____

[2]   It appears that the circuit court referred to ¶ 6 of the plaintiff's complaint (or to ¶ 6 of the supplemental complaint) suggesting that the Pacifica was already impounded at the time of the plaintiff's morning appearance at the Bergen County Courthouse on May 23, 2005 and asserting that this "den[ied the] plaintiff of his unalienable rights and liberty in violation of [the agents'] oaths of office and the constitution of the United States."   See Civil No. 08-4683, Docket No. 1-1, at 5.   However, same as officer Finley's report, the "Complaint" section of the plaintiff's pleadings filed in Civil No. 07-4683 (that is, the case appealed by the plaintiff), clarifies that the Port Authority agents only began their search for Pacifica around the time when the plaintiff was leaving the Courthouse en route to the United States District Court for the Southern District of New York.   Id. at 2 ("Agents had gone block by block searching got [the] plaintiff[']s vehicle"); accord Exhibit B (Finley's report that, according to Coppola and Ostini, the plaintiff, while he was in the Courthouse, refused to give federal officials the location of the Pacifica (and asserted that he was not the owner of the Pacifica) even though he drove the vehicle to and parked it at an unspecified location when he arrived at the Courthouse in the morning of May 23, 2005).

However, there is no constitutional right to a piece of information just for the sake of being informed, especially to a piece of information about a speculative future event, even if the occurrence of such future event may eventually cause the plaintiff to take certain actions which, in turn, might result in his deprivation of liberty.   A legal "adjudication cannot rest on any such 'house that Jack built' foundation."   Salyer Land Co. v. Tulare Lake Basin Water Storage Dist., 410 U.S. 719, 731 (1973); see also Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261, 293 (1990) ("[T]he text of the Due Process Clause does not protect individuals against deprivations of liberty simpliciter.   It protects them against deprivations of liberty 'without due process of law'") (Scalia, J., concurring).   Consequently, the plaintiff's allegations pointed out by the circuit court could be paraphrased as a constitutional claim only if they are construed as challenges to the plaintiff's arrest, or to his indictment, or to the plaintiff's potential conviction.

This Court already addressed the plaintiff's challenges to his indictment in its February 7, 2008 opinion and order.   See James v. Superior Court, Civil No. 07-3609, 2008 U.S. Dist. LEXIS 9012 at *18-22 (addressing the plaintiff's allegations that, as a result of false witnesses' testimony, he was indicted in New Jersey for attempted theft by deception and insurance fraud and dismissing these allegations on the grounds of witnesses' absolute immunity, and also addressing the plaintiff's malicious prosecution claim and dismissing that claim as premature[3]).

---

[3]   Dismissing the plaintiff's malicious prosecution claim, the Court noted that, since the prosecutor is absolutely immune for a decision to prosecute, the proper defendant in such a proceeding could be a nonprosecuting person who may have influenced the prosecutorial

decision. See James v. Superior Court, Civil No. 07-3609, 2008 U.S. Dist. LEXIS 9012 at
*22, n.4 (citing Hartman v. Moore, 547 U.S. 250, 262 (2006)).   However, as the
Hartman court explained, a plaintiff could have a claim against "the defendant [who is] a
nonprosecutor . . .   for successful retaliatory inducement to prosecute [only if that
plaintiff] show[s] that the nonprosecuting official acted in retaliation, and [if he] also
show[s] that [that official] induced the prosecutor to bring charges that would not have
been initiated without his urging."   Here, the plaintiff's pleadings are silent as to any
retaliatory inducement to prosecute.   Moreover, Exhibit B, a report by officer Finley,
indicates that the involvement of the United States Postal Inspection Service and
Inspector Coppola was limited to a mere teletype from Coppola to Finley notifying her
that the Pacifica had been impounded by the Postal Service and that Coppola advised
the plaintiff on May 23, 2005 that the vehicle, if found, would be impounded.   Since the
factual statements in Coppola's teletype to a police officer cannot be construed as his retaliatory
inducement urging the prosecutor to initiate a criminal action against the plaintiff, this
Court has no reason to construe the plaintiff's allegations as a Hartman claim against Coppola.
Needless to say, the Port Authority and its agents cannot be deemed liable on this type of claim
since neither the Port Authority nor its agents were in contact with the prosecutor or even with
the police officer.

15

The Court also addressed the plaintiff's wrongful arrest claim in its October 19, 2007 opinion and order and dismissed that claim as untimely, since the arrest warrant was executed prior to June 16, 2005, but the plaintiff's complaint in Civil No. 07-4683 was filed on October 1, 2007 that is, more than two years after the arrest, and the complaint was silent as to any event that could have been qualified as a basis for equitable tolling.   See James v. Superior Court, Civil No. 07-4683, 2007 U.S. Dist. LEXIS 77820 at *20-21 (explaining that the statute of limitations on civil rights claims is governed by New Jersey's two-year limitations period for personal injury and citing Goodman v. Lukens Steel Co., 482 U.S. 656, 661-62 (1987), Wilson v. Garcia, 471 U.S. 261, 276 (1985), O'Connor v. City of Newark, 440 F.3d 125 (3d Cir. March 13, 2006), Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998), and Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989)).   Moreover, the fact that this Court construed the plaintiff's pleading filed in Civil No. 07-3609 as a supplemental complaint, does not change the Court's statute of limitations analysis, since the supplemental complaint, filed on August 2, 2007, was just as time barred and as silent with respect to the equitable tolling issue as the complaint filed on October 1, 2007 in Civil No. 07-4683.

Furthermore, even if the Court were to overlook the time bar, and construe the allegations against the Port Authority and its unnamed agents as a Fourth Amendment claim based on the withholding of exculpatory evidence in connection with procurement of the plaintiff's arrest warrant (a claim corollary to that of false arrest), these allegations should be dismissed for failure to state a claim upon which relief may be granted. While it is true that a false or misleading statement in an affidavit used to obtain an

16

arrest warrant would result in a violation of the Fourth Amendment if the statement is "necessary to the finding of probable cause," Franks v. Delaware, 438 U.S. 154, 156 (1978), "[t]he test under Franks is whether the officers [executing the affidavit] 'knowingly and intentionally, or with reckless disregard for the truth,' made one or more material false statements in the warrant affidavit." United States v. Brown, 2008 U.S. App. LEXIS 13105, at *6 (3d Cir. June 19, 2008) (quoting United States v. Rufus Brown, 3 F.3d 673, 677 (3d Cir. 1993), the case "distinguishing between informants' untruthfulness and the affiant's intentional or reckless falsity").   Here, the plaintiff's Exhibit B (the report of officer Finley) makes it abundantly clear that neither Inspector Coppola nor any agent of the Port Authority was the affiant responsible for procurement of the plaintiff's arrest warrant.   At most, inspector Coppola could be qualified as Informant, but the affiant was police officer Finley, and the Exhibit indicates that she did not intentionally or recklessly falsify any information she obtained.   Therefore, the plaintiff's allegations, if construed as a challenge to the plaintiff's arrest warrant, should be dismissed.

Finally, the Court may construe the plaintiff's allegations as a challenge to his potential criminal conviction (on the charges of theft by deception and false reporting), i.e., as the plaintiff's attempt to allege that he might be convicted after being unduly entrapped to commit the offense he otherwise would not have committed.   See e.g., Mathews v. United States, 485 U.S. 58, 62-63 (1988) (clarifying that entrapment provides a legal defense to defendants in connection with criminal charges, since it negates the intent to commit the crime).   However, if so construed, the plaintiff's allegations should be dismissed pursuant to the abstention doctrine.

17

The doctrine of abstention, which has developed since Younger v. Harris, 401 U.S. 37 (1971), "espouse[s] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). The "Younger abstention," as the court's teaching is known, "is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system." Evans v. Court of Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1234 (3d Cir. 1992), cert. dismissed, 506 U.S. 1089 (1993). Comity concerns are especially heightened when the ongoing state governmental function is a criminal proceeding. See id.

The specific elements of the Younger abstention are that: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the claims."[4] Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989). All three Younger criteria are met in the case at hand. First, the plaintiff's allegations concern his criminal case pending before a state court. Second, based upon the fact that the

---

[4] Exceptions to the Younger doctrine exist where irreparable injury is "both great and immediate," Younger, 401 U.S. at 46, i.e., where the state law is "flagrantly and patently violative of express constitutional prohibitions," id. at 53, or where there is a showing of "bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief." Id. at 54. These exceptions are to be narrowly construed. See Loftus v. Township of Lawrence Park, 764 F. Supp. 354, 357 (W.D. Pa. 1991). Thus, "only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction . . . is federal injunctive relief against state prosecutions appropriate." Perez v. Ledesma, 401 U.S. 82, 85 (1971). The plaintiff has not asserted any circumstances that would bring the case at bar within any of the narrow exceptions to the Younger doctrine.

plaintiff is attempting to raise issues concerning the validity of his arrest and his potential defense of entrapment, these pending criminal proceedings clearly implicate important state interests.   Third, the state forum affords the plaintiff an adequate opportunity to raise his challenges.[5]   Consequently, dismissal of the plaintiff's allegations is plainly warranted.

B. "Notice of Appeal and Motion to Amend Original Complaint"

The plaintiff's "Notice of Appeal" filed in Civil No. 07-4683 as Docket No. 6 included the second heading reading "Motion to Amend Original Complaint."   The motion was limited to the plaintiff's request to assert that natural persons named as defendants in Civil No. 07-4683 (and Civil No. 07-3609), i.e., defendants Ostini, Zisa Carroll, Finley, Aletta, Coppola, Massey and unknown agents of the Port Authority of New York and New Jersey, were sued by the plaintiff "jointly and severally in their [p]rivate and [p]ublic capacit[ies]."   Civil No. 07-4683, Docket No. 6 at 2.   However, the Court's dismissal of the plaintiff's allegations on the grounds detailed in the Court's opinions filed in Civil No. 07-3609 and Civil No. 07-4683, as well as in the instant opinion, was not based on the plaintiff failure to assert that the defendants were liable jointly and severally.   Similarly, the Court already presumed that the plaintiff intended to sue defendants in their public capacities in order to meet the threshold color-of-law requirement.   See West, 487 U.S. at 48; Adickes, 398 U.S. at 152; Sample, 885 F.2d

---

[5]   The plaintiff has not asserted that he is unable to present his federal claims in his related state court proceedings. Thus, this Court may assume that the state procedures will afford him an adequate remedy.   See Kelm v. Hyatt, 44 F.3d 415, 420 (6th Cir. 1995) (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 17 (1987)) ("Initially, we must presume that the state courts are able to protect the interests of plaintiff").

at 1107.   Consequently, allowing the plaintiff to amend his complaint and supplemental complaint in the fashion requested in his "Motion to Amend Original Complaint" would not cure the deficiencies of his pleadings that caused this Court's dismissal. Therefore, the Court will deny the plaintiff's motion.   See Foman v. Davis, 371 U.S. 178, 182 (1962) (explaining that, while ordinarily the plaintiff may be granted leave to amend when justice so requires, granting leave is futile if the amendment cannot cure the deficiencies causing the dismissal).   The Court, however, will allow the plaintiff to file an amended complaint, pursuant to the circuit court's order.

Drafting his amended complaint, the plaintiff should be mindful of the requirements imposed by Rules 18 and 20 of the Federal Rules of Civil Procedure.

Rule 20(a)(2) of the Federal Rules of Civil Procedure limits the joinder of defendants, and Rule 18(a) governs the joinder of claims.   See Fed. R. Civ. P. 18(a), 20(a)(2).   Rule 20(a)(2) provides: "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."   Fed. R. Civ. P. 20(a)(2)(A) and (B).   Rule 18 (a) provides: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Wright & Miller's treatise on federal civil procedure explains that, where multiple defendants are named, the analysis under Rule 20 precedes that under Rule 18:

Rule 20 deals solely with joinder of parties and becomes relevant only

when there is more than one party on one or both sides of the action. . . .

20

> Therefore, in actions involving multiple defendants Rule 20 operates
>
> independently of Rule 18 . . . . Despite the broad language of Rule 18(a),
>
> plaintiff may join multiple defendants in a single action only if plaintiff
>
> asserts at least one claim to relief against each of them that arises out of
>
> the same transaction or occurrence and presents questions of law or fact
>
> common to all . . . .

Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, <u>Federal Practice & Procedure</u> <u>Civil</u> §1655 (3d ed.); <u>see</u> <u>also</u> <u>United States v. Mississippi</u>, 380 U.S. 128, 143 (1965); <u>Ross v. Meagan</u>, 638 F. 2d 646, 650 n.5 (3d Cir. 1981), <u>overruled on other grounds</u>, <u>Neitzke v. Williams</u>, 490 U.S. 319, 328.

Consequently, in his amended complaint, the plaintiff may not name additional defendants or assert additional claims unless such additional claims or at least one claim against each additional defendant is transactionally related to the events challenged in the complaints filed thus far in Civil No. 07-3609 and Civil No. 07-4683. <u>See</u> Fed. R. Civ. P. 20(a)(2).

## IV. CONCLUSION

For the reasons set forth above, the Court will: (1) dismiss the allegations stated in the plaintiff's pleadings that were addressed in this Court's opinion and order docketed in Civil No. 07-3609 as Docket Nos. 2 and 3, for the reasons stated therein; (2) direct the Clerk to docket those opinion and order in Civil No. 07-4683; (3) dismiss the plaintiff's allegations that the Port Authority of New York and New Jersey and its unnamed agents violated his constitutional rights by not informing him during his morning appearance at the Bergen County Courthouse on May 23, 2005, that his

21

vehicle, if found, would be impounded; (3) deny the plaintiff's motion to amend his pleadings in the fashion described in Civil No. 07-4683, Docket No. 6, at 2; (4) grant the plaintiff leave to amend his pleadings, pursuant to the circuit court's order, Civil No. 07-4683, Docket No. 17; and (5) direct the Clerk to file this opinion and the accompanying order in both Civil No. 07-3609 and Civil No. 07-4683.

                                /s/ Katharine S. Hayden

7/31/08

                                **KATHARINE S. HAYDEN, U.S.D.J.**

Dated: